Our next case is number 22-13215, United States of America v. Mikel Mims. Good morning, your honors, and may it please the court. Your honor, I'm Mikel Mims, and I'm an assistant federal public defender for appellant Mikel Mims, and we're seeking vacatur of an order that modifies a final judgment. More specifically, the order modifies the part that imposes a schedule for payment of criminal restitution. I think it's safe to say that on page 23 of the government's brief, it joins the point that the district court was not authorized to issue the order without a statutory basis. But none of the three statutes relied on by the government provided such authority, and in any event, those statutes imposed procedural and substantive requirements that were not satisfied as demonstrated by the record. And I'd like to begin with 18 U.S.C. section 3613 capital A, which I refer to as the default statute. The order cannot be affirmed under that statute for two reasons. Number one, the district court did not issue the order until years after its authority under the default statute had expired. And two, the district court never satisfied subsection A2, which requires the court to consider enumerated criteria in determining which action to take under the default statute. So as to the first point, our position is that within quotation of section 3565, Congress intended for authority under the default statute to expire with Ms. Mims' term of probation. The government's position is much broader and essentially is that the statute, the default statute, authorized the court to take whatever action whenever it wished to. But just a side-by-side comparison of the two positions demonstrates why our position is the better interpretation of the statute. The first point... I apologize. I've been flipping between the statutes here, and I've forgotten which one you said you're talking about. Would you please remind me? 3613 capital A. Great. That's the one I was looking at. Right. And it's entitled effect of default, and so that's why I refer to it as the default statute, Your Honor. The other one, the 3613, I refer to that as the civil remedy statute. So as to our first point, again, the side-by-side comparison of our interpretations, one, our position is supported by application of rules governing planning, structure, grammar, and punctuation, and that's demonstrated in our reply brief. The government's position is more so based simply on a block of the text coupled with conclusory statements about what that text means and citation to cases that, as we demonstrated in our reply brief, are inapplicable here, either because they are factually distinguishable or they rely on statutory regimes that weren't in place or, excuse me, that had been replaced by the time the proceedings below were instituted. I understand your argument, your grammatical argument about pursuant to 3565, but some of the items in the series don't have anything to do with probation and supervised release, such as, for example, the court can order the sale of property. It doesn't seem to me to make any sense to say the court can order the sale of property pursuant to Section 3565. So how can we make sense of that? Because there are procedural requirements under 3565, and in turn, 3565 incorporates Federal Rule 32.1 that we're saying are what is being imported. And so, for example, there needs to be a hearing. There needs to be consideration of certain factors, including the Section 35538 factors. And then also another point is that when you look at the progressive increase in harshness, what we believe the purpose of this statute is is to provide the district court with the sword of Damocles, the revocation of probation and supervised release, but in the first instance, give the defendant an opportunity to actually comply. And so that's why you see the other actions progressively increase in harshness. I'm not sure you're going to persuade at least me with give the person a chance to comply. It seems that your client had plenty of chances to comply and chose not to. Well, we don't know why she didn't comply because there was never actually a hearing on that point. And that was actually our second point, is that under subsection A2, the court before issuing any sort of ruling under this statute has to take into consideration a number of those factors. And one of them is, for example, does the defendant have dependents, right? And that becomes a financial obligation that is weighing against his or her ability to be able to meet her financial obligations under a final judgment. Would that have been encompassed in the financial disclosure that she was encouraged to fill out? Perhaps, but again, this point about the defendant not having an opportunity or excuse me, having the opportunity and not doing it, that's essentially a neutral point because we're also talking about on the flip side to that same coin. The government has a statutory affirmative obligation to enforce restitution, and it sat out there for four years. And so, again, the government brought this to the court and asked for a ruling, but at no point submitted any sort of evidence under subsection A2. And without that and without Chief Judge Altanaga holding a second hearing, as Judge Cook had alluded to, we don't really know why restitution was not being paid. And that's, I believe, clearly the purpose of subsection A2. One argument that seems to be important to you is that the case was closed, but my review of the docket doesn't necessarily establish that the case was closed. When do you think the case, the criminal case, was officially closed? Once the term of probation ended. Do you have a case or a rule that says that, or does that just seem like the logical time that a case would close? Well, it seems like, well, one, it seems like the logical time that a case would close. And then a number of the cases that we cited, including one moment, Your Honor. While you're looking for that, I'll say it seems like another logical time that a case might close would be when all of the restitution was paid. It seems that a case could close when the defendant has satisfied her responsibilities. No, Your Honor. So in Ray Wild, Judge Newsom said that, for example, by the time that you file a Section 2255 motion, the criminal case is closed. Those are actually his words verbatim. And then a number of cases have treated those motions filed after the closing of proceedings like that as a civil proceeding. And I believe that even the Lindenville Savings Bank and Trust case that was cited by the government even says that at the point that, you know, the adjudication of restitution is a criminal matter, but the enforcement of it is actually a civil matter. And actually one of the cases that it relied on for that proposition is this court's Satterfield decision. And so the point is that, yes, the case is closed, but Congress has provided a number of remedies for the court or, excuse me, for the government to enforce restitution. How would you deal with federal rule of criminal procedure 38 that deals with restitution and ensuring compliance? And it says the court may issue any order reasonably necessary to ensure compliance with a restitution order or notice order after the disposition of appeal, including a restraining order, injunction, order requiring the defendant to deposit all or part of any monetary restitution into the district court's registry or an order requiring the defendant to post a bond. That it would have to be read in conjunction with the statutes that actually govern or provide additional insight as to what Congress wanted the procedure to look like, Your Honor. Doesn't that suggest that the district court retains the ability to ensure compliance as long as the restitution has not been paid? Insofar as it's consistent with the statutes, Your Honor. So, again, we're not saying that once the final judgment is handed down that the court has absolutely no jurisdiction within the case itself, but to the extent that it is going to have to be consistent with some statutory grant of authority. And I do believe that that's consistent with the notion that, or excuse me, the idea that federal courts are courts of limited jurisdiction and it's presumed that a cause falls outside of that. And I'd just like to just jump to subsection 3613 with the minute that I have left. We demonstrated in our brief that the statutory regime under this civil remedy statute was intended to require the filing of an independent civil action. There are instances where a proceeding could be brought within the criminal case, but again, that presumes that the criminal case is still open. And in this case, because it wasn't open with the termination of the term of probation, then it stands to reason that the court needed to, or excuse me, the government needed to institute independent civil action in order to revoke the court's jurisdiction. One of the cases that you cited was Satterfield to support that argument, but as I read Satterfield, it seems to be suggesting that the civil enforcement mechanism is extra and gives also an opportunity to individuals in addition to the government to collect restitution. Can you be really specific about why you think Satterfield supports your argument here? I didn't cite Satterfield for that position. I cited a number of the statutes within the Federal Debt Collection Procedures Act, which many courts have agreed is imported into the civil remedy enforcement statute. And two pieces of low-hanging fruit is that nothing on the face of the civil remedy statute mentions the word criminal, which is important because Congress's intent is determined from the language actually used in the statute. And then number two, the statute itself is called civil remedy statute, or excuse me, civil enforcement of civil remedies. And so with that, Congress is intending to not just simply provide an extra avenue for enforcing restitution, but indeed the purpose of it passing these statutes was to consolidate a patchwork of enforcement remedies that were out there. Before the passage of this act, courts believed that in order for restitution to be enforced, the government had to go to 50 different states or the state wherever the judgment was actually entered. And the burden there was that the government has to figure out, okay, well, what does the state require in order to enforce restitution? Why isn't that more similar with what I suggested Satterfield said, which was that the statute establishes an additional opportunity or means of getting restitution dollars rather than an exclusive way to do that? Because I believe that Satterfield was actually issued before the enactment of both the Mandatory Victim Restitution Act, as well as the Federal Debt Collection Procedures Act. And so that was one of the reasons why we said that a number of the cases the government cited in their brief were inapplicable because they weren't actually taking into consideration the import of the FDCPA. And indeed, one of the cases said that that act is largely irrelevant to this case. It was either Thornton or Timothy. Timothy said that that act is irrelevant to this case because this case is actually governed by the Victim and Witness Protection Act, which did have materially different language in it. Thank you, Your Honor. Thank you. We'll give you your full five minutes back for rebuttal, Mr. Stez. Morning, Your Honors. May it please the Court. Amanda Perwin on behalf of the United States and with me is AUSA Brett Geiger in our Financial Litigation Unit. Your Honors, the long and short of this is that there is no authority anywhere in the MVRA that ties the district court's jurisdiction to the period of probation or the period of supervised release. So in the absence of that, obviously, this court is not in a habit of reading language into statutes that isn't there. But I think the easiest way to sort of come to that conclusion is to consider a few basic and I think relatively uncontroversial principles. The first one is that the MVRA makes restitution a part of a criminal sentence. It's not simply a condition of probation. It's not simply a condition of supervised release. So the whole point of it is that it can be enforced independently of either of those two procedures. It's a totally separate statute, totally separate set of enforcement mechanisms. And the court in Satterfield recognized that. The Ninth Circuit in Carter recognized that. There is probation and supervised release are not even ordered necessarily in every single criminal case. That has no bearing on whether restitution can be enforced. The second principle that, again, I think is relatively uncontroversial is that, and I should have probably mentioned this in my brief, and I apologize for that, but federal courts always have jurisdiction to enforce their own judgments. That's part of the common law. I think it goes back at least as far as 1934 is the earliest case I found on that. So with that as a backdrop, I think that's when we get into the MVRA and its enforcement mechanisms. That starts with 3664. That's the statute that governs enforcement of restitution, and it gives, as the court is aware, the government a number of options, essentially. None of them, again, limit jurisdiction to supervised release. None of them limit jurisdiction to probation. But something has to confer jurisdiction. It's not a matter of not limiting it. So where is jurisdiction conferred in the statute? So I would say under the statute it's in 3613 capital A, which uses the words the court may, and then gives the court nine different options for how it can enforce restitution. And that's sale of property. There's a resentencing provision. There's a number of options. And I would also argue it derives from the common law, because, again, courts always have jurisdiction to enforce their own judgments. No dispute that restitution is a part of a criminal judgment. So 3613A is a statute that the government relied on in this case, and it's a very broad grant of authority to the district court to essentially do anything reasonable to enforce restitution. And I can address this argument about the comma and this notion that pursuant to 3565 confers some kind of limitation. What I would say to that is that to read the statute that way, even if the placement of that comma, you know, confers some sort of ambiguity on the statute, to read the statute that way would essentially render it absurd. And there's a couple of reasons for that. The first is that 3565 governs revocation of probation only, not even supervised release. That's 3583. It's a totally different statute. So if courts are required to enforce restitution under 3613A only as a revocation of probation issue, that takes us all the way back to the Probation Act, right, which is where a restitution could only be a condition of probation. But we know that restitution is not that under the MVRA. We know that it's part of the criminal judgment. So if Congress intended to permit the courts to enforce restitution only as a violation of probation, that would undermine sort of the whole statutory scheme of the MVRA. So what if the case was actually closed? Your Honor, the case probably was closed. The district court's jurisdiction in a criminal case typically ends, you know, at some point after sentencing. And then there are a whole bunch of different rules, depending on what, excuse me, the government wants to do that govern when it can do it. For example, Rule 33, motions for a new trial, Rule 35, substantial assistance. So the time periods are different. For restitution, there really is no limit other than 20 years, the 20-year statute of limitations on liability in 3613. So does that mean the case was maybe closed, as you say? Or does that mean that shouldn't the government be arguing that the case would close when restitution is paid or when the statute of limitations runs out? Your Honor, I would just not think it matters whether the case is closed. I think whether or not the case is closed is not actually the question, if that makes sense. Because I think the district court retains jurisdiction to do certain things, depending on what those things are, under different statutes, right? One of them is MVRA, and then the federal rules, you know, provide other time limitations. So I think the relevant question is not necessarily whether the case was closed, right? For purposes of restitution, no, it wasn't. For purposes of perhaps other motions, yes. I'm just curious about the practice in the Southern District of Florida. Are there other situations in which the government tries to collect restitution after the sentence is fully served in the criminal case? Yes, Your Honor. It happens all the time. And there are actually a number of sort of more minor administrative things that the government does as a matter of course. For example, if a victim dies, the government will notify the court that it needs to substitute a victim. And that could, of course, happen at any time. But yes, it is routine that the government goes back to district court and says the defendant isn't paying, financial circumstances have changed, any number of administrative matters. Isn't it unusual that four years elapse between the end of probation and the attempt to collect the restitution? That I don't know, Your Honor. But what I would say about what the government did do is that all they asked for, they didn't ask for, you know, the sale of property. They certainly didn't ask for prison time. They simply asked that the court's original order of restitution be enforced. So there was no change that was sought. It was simply back pay and a resumption of payments under the original restitution order. Do you think they could have asked for prison time? Well, that… Nothing should have, but… So I think that under 3614, that authorizes the government to seek prison time if there is a willful refusal to pay restitution. Here, arguably, yes, because back in 2017, this defendant did file a pro se pleading in which she, best I can tell, purported to forgive her own debts. So she basically announced to the district court that she was not going to pay restitution. And that wasn't based on any changed financial circumstances or anything like that. So arguably, yes, but they didn't. What about counsel's argument that the court was obligated to consider certain things before deciding how to move forward? So what I would say to that is that because the court simply ordered a resumption in payments and back pay, there was no occasion to consider… In other words, there was no do-over. All of this sort of attendant due process that came with the criminal case happened during the criminal case. And restitution was ordered, and a payment schedule was imposed. And at that point, there was no objection. There was no appeal. But the payment schedule obviously was not followed, which is why you have the problem, right? Yes. And the defendant would have the opportunity and actually still has the opportunity at any time to go back into court under 3664K and say, I can't make these payments. I need a modification. One of the options, though, under 3613AA1 is enter or adjust a payment schedule. Why wasn't that what the court did here? That is what the court did here. Okay. So that is one of the actions in the first paragraph. So then why aren't the considerations outlined in the second subparagraph of A required? Well, Your Honor, I think that the court most likely did undertake that exercise, right, based on the fact that this defendant was given multiple opportunities to fill out a financial disclosure form, to explain why she hadn't been making payments. I would argue even back in 2017, that announcement, I refuse to pay anymore, is something the court could have considered. So because there was no – because the defendant had ample opportunity to present changed circumstances, I think the court certainly had the power to simply say, you owe back pay and continue making payments. Do we have any cases outlining what the court has to say? I know, for instance, for 3553A, the court doesn't have to specifically address every piece of information, right, that it has considered. Do we have any cases outlining anything about what the court needs to say for subsection B? Not that I know of, Your Honor. The one thing that I would say is that, again, because the court always has jurisdiction to consider changed economic circumstances, the defendant has the opportunity at any time to come back and request a change in that schedule. So there's no limit on how long the court has to consider anything the defendant wants it to consider. But a limit on considering that might be different than a requirement to consider it, right? Yes, Your Honor. But in this case, I think, you know, given the record in this case and given the number of opportunities the defendant had to explain any sort of change in circumstance, you know, the court, I think, had the power under 3613A to simply, you know, remind the defendant she had to pay. What about the fact that, so there was, I guess, a first hearing ordered, and we know that Ms. Mims did not participate. I guess there was a lack of notice. So Judge Cook calls the next hearing, and Ms. Mims does participate in this. But here we have a situation where the judge is suggesting that the district court lacked jurisdiction to act. So there would not have been a need for her at Ms. Mims at that point in time to start raising the issues about any sort of modification of the restitution payment schedule. And it's only when it is moved to the second judge. And that judge went ahead and issued the order without a hearing. Why wasn't a hearing required when Chief Judge Altanaga was reversing course? And now this would have been an opportune time for Ms. Mims to present such arguments that she has for why payments need to be modified, et cetera. Well, Your Honor, a couple of things. There is not that I can see any requirement in the statutes that a hearing take place under these circumstances. As a matter of due process, again, Judge Cook invited the parties to file a motion, or invited the government to file a motion. The government did. Ms. Mims filed a response. That was another opportunity. I understand they were arguing over jurisdiction, but that was another opportunity to present changed financial circumstances. Then Judge Altanaga issues the order. But, again, the opportunity is still there. Ms. Mims could have objected to the order. Ms. Mims could have raised her changed financial circumstances then under 3664K. And, again, today there is still an opportunity. So it's hard to say that there wasn't notice and that there wasn't an opportunity. What about the defendant's point in the response to the government's motion that the restitution was one of the various conditions listed under the subheading probation in the court's judgment, which said, if this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the scheduled payment sheet of this judgment. I understand that it certainly could be separate from probation, but does that mean that in this case it wasn't? No, Your Honor. It's just both. The restitution is part of the criminal judgment, along with a schedule of payments that the court orders. It is also true that restitution is a mandatory condition of probation or of supervised release. It could have been revoked for whatever reason it was not revoked, but that doesn't remove other enforcement authority. Is that what you're saying? That's correct, Your Honor. And Ms. Mims was no longer serving her sentence of probation at the time. So the probation office could not have violated her probation at that point. But her restitution obligation survives. It's part of the criminal judgment, and it's subject to enforcement under the NBRA. I see my time is up, so I thank the court for your time and ask that you affirm the order. Thank you. There were about seven points that came up that I'll try to get through. Number one is the practice in the Southern District of Florida. Judge Cook said that in her 17 years of handling restitution, millions of dollars, she has yet to see this. And, indeed, the government's justice manual has multiple titles in it. One is civil, which is Title IV. One is criminal, which is Title IX. And enforcement of restitution and other financial obligations falls under civil. So even the government has treated it as a civil matter. And so the point is that both the bench and the bar have seemed to understand that this is a civil matter, the enforcement of criminal restitution. Which takes me to the second point, is that restitution is part of the criminal sentence. We don't quarrel with that proposition. And, indeed, Lindenville Bank, which is a Second Circuit case cited by the government, as well as Satterfield, both indicated that. But in Satterfield, which is quoting Satterfield at page 702, the Second Circuit says, Enforcement of restitution order is civil in nature, while adjudication of the obligation to pay is criminal. And so we're no longer at the point of adjudication. We're at enforcement, which is civil in nature. And Satterfield also says that the statute at the time contemplated the filing of a civil suit after the imposition of a restitution order. And that's at page 703 of the Lindenville case. If it's purely civil, then why is revocation of probation an option for enforcement? Because, again, I believe that there's still a criminal proceeding that's pending. And so, to your point, the case isn't necessarily closed at that point. And that's why I think the court is able to do it within the criminal case while the defendant is still on probation under 3613 Big A. What about the fact that 3664 may have lost the statute because it's so many pages, but says an order of restitution may be enforced by the United States in the manner provided for in Subchapter C of Chapter 227 and Subchapter B of Chapter 229 of this title or by all other available and reasonable means? Why isn't that a broad catch-all that gives the authority here? Well, the catch-all can't be read to render the first provision about Subchapter C of 227 and B of 229 meaningless. And so that is intended to reference any other available statute that we haven't already mentioned in the previous provision. If that were true, wouldn't it say or by any other statutory enforcement mechanism rather than all other available and reasonable means? So that's my second point. The first point is other statutes. So you may have 3664K, which also contemplates the adjustment of a restitution payment schedule as long as certain procedural and substantive requirements are met, which, again, the record doesn't reflect here. But then you may have other available means, such as somebody who's incarcerated. The BOP can credit their inmate trustee account. We've seen that in cases that the government has cited. When somebody is no longer incarcerated, 3613 paragraph C creates a lien in the same manner as a tax lien under the Internal Revenue Code. The Internal Revenue Code has provisions for attaching to non-exempt property to satisfy a tax lien. So that may be another option that's available to the government. And so I'm going to say this, and then I'm going to go back. The point is that the government has at its disposal a plethora of options. And so this notion that interpreting 3613A to tie it to the term of probation is absurd actually is not, because, again, once that is off the table, the government still has other options available to it, including the Civil Remedies Statute as well as the Federal Debt Collection Procedures Act. This is not a case about four years elapsing. And, you know, it's really about Congress has laid out an entire enforcement regime for the government to enforce. And we have never taken a position, at least since we've been retained, that she is no longer on the hook for restitution. We're just saying that the government has to go about it the appropriate way. And what it asked the court to do, and not just what it asked the court to do, but what the court actually did was adjust the restitution order, is not appropriate without a statutory basis in compliance with that statute's procedural and substantive requirements. And for the reasons stated in our briefs in here, we ask that the court vacate. Thank you, Your Honor. Final case for this morning is case number 22-13816. Oh, excuse me, wrong case number. No, no problem. It's number 23-13152, Otto Candies et al. versus Citigroup, Inc. May it please the court. David Cooper on behalf of the plaintiffs' appellants. This is in some ways a complicated case, but the district court's errors and the need for reversal are fairly straightforward. The district court applied a heightened pleading standard for scienter, justifiable reliance, and agreement that simply do not exist. The court also refused to credit the factual allegations of misrepresentations and reliance that are detailed in the complaint. I'd like to start with the issue of scienter, because it was the foundation for much of the district court's opinion, and the entirety for its basis for dismissal of the aiding and abetting claims. The district court committed a legal error here in applying a strong inference of scienter test that does not apply outside of the securities broad context. Rule 9B is perfectly clear that knowledge, quote, may be alleged generally. The Supreme Court in Iqbal was equally clear that Rule 9, quote, excuses a party from pleading scienter under an elevated pleading standard. And it said exactly what the standard should be for pleading scienter for a fraud claim, and that is the standard of Rule 8A, which is plausibility. The PSLRA is equally clear that the heightened standard Congress determined would only apply to actions brought under this chapter, that chapter being for claims for securities fraud. So the standard for scienter for all the claims here is simple. It's the standard of plausibility under Rule 8. Even if we agree with you about that, why can we necessarily impute this knowledge to the city group executives in New York, say, who are having conversations with investors? What gets you from some of these people knew about it to Citibank as an entity knows about it, including those individuals who are communicating? Sure. So a few things. First, city groups, if they had employees who had knowledge of the fraud, that knowledge is imputed to the company. And that's we cite the Chang case from this court, which says that an employee's knowledge is imputed to the corporation as a whole. So the question is, were there any city group employees who had knowledge of the fraud or more specifically, are there plausible allegations of that? And the allegations far exceed plausibility, frankly, are far more than you'd see in almost any fraud case. And that's because we have an admission from Citigroup CEO that they fired an employee because of his criminal involvement in the fraud. The only response we get from the other side on this is that person could have been a Banamex employee. But if we look at the actual statements from the Citigroup CEO, he did not say or suggest in any way that this was a Banamex employee. He said we quote Citigroup terminated one employee. And this is Docket 83-4. We also cite the earnings review statement from the CEO, which says, quote, we've terminated an employee who we believe was criminally involved in the fraud with no statement or reference to Banamex at all. And so at the very least, there is a plausible inference that Citigroup had knowledge of the fraud when their CEO says they terminated someone because of their criminal involvement in the fraud. If that wasn't enough, the Mexican regulators specifically said that Citigroup employees, not Banamex, Citigroup employees had knowledge of the fraud. And I call this court's attention to paragraphs 176 to 177 of the complaint. Do you have any case law that suggests that the findings, the criminal findings of another country, how those findings should weigh in our determination of criminal activity of a U.S. corporation? I'm not aware of any case on that. I'm going in either direction. What I say is that we're not suggesting remotely that this is binding on U.S. courts. What we're suggesting is at the pleading stage when the question is, is it plausible that Citigroup had knowledge? When you have Mexican regulators specifically saying that 10 Citigroup employees had violated Mexican criminal law and a Mexican criminal court issued an arrest warrant against three Citigroup ICG employees for the crimes detailed in their report, that is at the very least plausible, especially when you combine it with the fact that Citigroup's own CEO said they fired an employee for criminal involvement. And the fact that if we look at the nature of this fraud, it was apparent on the face of documents that Citigroup had. That is, they have the documents showing the amount of the cash advances, and they have the documents showing that it was five times as much as the value of the underlying PEMEX contract. Is there any indication in the record? I think I know the answer to this, but as you pointed out, this is a pretty voluminous record. Is there any evidence in the record of the employee that was fired that Citigroup's CEO is referencing? Was that a Banamex employee? So I don't think we have anything in the record to say exactly who that person was. But I also want to make clear one very simple point, which is that the fact that someone is a Banamex employee, even if we assume that that person is, but again, there's no basis to assume that. But even if we did, that doesn't mean the person's not also a Citigroup employee. That is, a person could be an employee of both. And I think the sort of perfect example of this possibility, you're telling us that there's no evidence in the record of who this person was that is being referenced in the statement that was fired. There's no, not that I'm aware of that's alleged in the complaint. I mean, the record is the complaint at this stage. And the complaint says that Citigroup fired its employee for his involvement in the fraud. It cites the documents from the CEO saying that, and there's no basis to believe that this person was not a Citigroup employee. And to be clear, I don't even think Citigroup has said that this person outright is not a Citigroup employee. So, I mean, presumably they know who this person is. Do we know, or do you have any allegations about what this person's motivation was? Because it seems, perhaps everything is obvious in hindsight, but it seems that this scheme was going to blow up at some point. Do we know what this person or group of people hope to accomplish? Sure. So, I don't, I think there, I think I can't speak to the personal motivations of these individuals, but what I can say generally is what Citigroup's motivation was, and that was to make money off the deal, which they made tens of millions of dollars. And I know that what they say is, well, but this would inevitably blow up. I think there are a couple of points on that. First, is that Citigroup, and this is alleged in the complaint, always believed that the Mexican government effectively would reimburse them. And so, the idea that this would blow up wouldn't necessarily blow up on them. It certainly blew up on our clients. They lost a billion dollars. So, it blew up in a very significant way. But whether it would blow up on them and whether they would not ultimately get reimbursed by the Mexican government is an entirely separate question. The second thing is that, frankly, people make short-term decisions all the time, right? They made a lot of money in the short term, maybe inevitably it would blow up, just like, you know, Bernie Madoff, inevitably it would blow up. But people commit frauds that would inevitably blow up. And they do so for some short-term gain, even if there is some kind of long-term risk. I guess the reason I was asking that is that Chang says, an agent's knowledge will be imputed to the principal unless the agent's interest is entirely adverse to the principal's interest. Meaning, the actions must neither be intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation. Thus, imputations permitted when an agent's actions were designed to turn the corporation into an engine of theft against outsiders, as opposed to when an agent took actions that diminished the assets of the corporation itself. How do you think the allegations here fit within that standard? I think they fit within that standard because we specifically allege that it benefits Citigroup to the tune of tens of millions of dollars, and so there was a clear benefit. And I'll also note that they did not argue here, and I believe did not argue below, that there was an entirely adverse interest on behalf of anyone who was alleged to be an agent or employee. And so if they wanted to make that argument, they could have made that argument. They didn't. And I think the reason they didn't is because the idea of entirely adverse interest doesn't mean that it ultimately could not hurt the company. The question is whether there is some benefit to the company, and clearly here there was. Whether or not ultimately there was going to be some downside to Citigroup for engaging in a fraud, perhaps. Perhaps not, if the big Mexican government was reimbursing them. But that doesn't satisfy the entirely adverse interest standard. I also want to point out that this different SKU 1 question about the allegations in the complaint, because I think all of this is going to, certainly we're on motion to dismiss, come back to the allegations in the complaint. You would agree that when you preface an allegation based on information and belief, that pursuant to our court precedent, we don't need to take that as true. That's a conclusory allegation. Would you agree with that? I would not agree that it's considered conclusory if it's on information and belief. I think if it's on information and belief, what this court has said is it's going to look pretty carefully at whether or not it's plausible. But plausible is still the standard, regardless of whether something's on information and belief. So conclusory, I think, has to do with more, is it a factual allegation versus just sort of a conclusion? But if it's a specific fact that's being alleged, even on information and belief, the question is still whether or not that's plausible. But perhaps the court's going to look a little bit harder at plausibility if it's only on information and belief. I also want to talk about the misrepresentations. And here, the issue is not really a supposed lack of specificity, because the allegations about misrepresentations are incredibly specific and voluminous, as this court noted. What Citigroup really argues about them are a few things. First, some they don't really dispute at all. So, for example, paragraph 488 of the complaint details a specific Citigroup misstatement to many plaintiffs in February 21st, 2014, that OSA was, quote, above board with its financials. They don't dispute that that was, in fact, a misrepresentation. Some others, what they say are it was Banamex, it wasn't us. So, for example, paragraph 1488 of the complaint, paragraph 1260 of the complaint, those detail allegations about misstatements made by Mr. Granja. And what they say is, well, Mr. Granja worked for Banamex, so, therefore, it doesn't apply to us. And I think for those kinds of misstatements, we have two responses. The first is simply it's completely undisputed. And the district court noted that there was no dispute in this point, that Banamex was an agent of Citigroup for purposes of this case. They did not dispute that Banamex is an agent, which means that all the allegations against Banamex are imputed to Citigroup under well-established law. So that's the first point. The second point is that it's specifically alleged in the complaint in great detail about exactly why Mr. Granja was, in fact, an employee of Citigroup. So it said that he was a Citigroup managing director, and then Mr. Granja himself on his own LinkedIn page referred to himself as a Citigroup managing director from 2010 to 2014. The same basic logic applies to a July 15, 2013 email from Citibank, which, again, was undisputed to be an agent of Citigroup, and said, quote, OSA's financial statements are fine. This is paragraph 938 of the complaint. So very detailed allegations of misrepresentations that are dispositive here, and I see my time is up. I know there are a lot of other issues in the case. If there are any other questions now, I'd be happy to answer them or in rebuttal. Thank you.  Good morning. I'm Adam Hackey for Citigroup. The district court properly dismissed this case after affording plaintiffs three amendments to their complaint. Plaintiffs are harshly critical of district court, but the real quarrel is with the pleading standards, and really 9B. When the district court dismissed the second amended complaint, it was both correct and fair when it advised plaintiffs to file a new complaint that walks through the particulars of each plaintiff's interactions with OSA and Citigroup, who was there, what was said, and how exactly they relied. That is, of course, exactly what 9B requires. Plaintiffs returned with a much longer complaint and more structured complaint. It takes a long time to read, but the plaintiff by plaintiff structure ultimately reveals what's missing, which I'm going to walk through. When you step back from things, it's not surprising that plaintiffs can't state a claim against Citigroup. Plaintiffs are creditors of OSA, not Citigroup. Few of them claim to have even interacted with Citigroup. And in limited instances where they do say that they interacted with Citigroup, it was largely a ministerial function, like a trustee person in New York, to your question, Judge Grant, or an unspecified Citigroup personnel. Again and again and again, they don't name the person that they were dealing with. 9B does not allow that. And in most cases, they don't allege, actually in all cases, they don't allege that the person they were dealing with knew anything about the alleged fraud. I don't know that I read the order dismissing the complaint as making those arguments. Can you direct me to where that order made those arguments that you just outlined? The order does several things. First of all, we're obviously not limited to the order. We made sort of all these arguments below. The order focuses on the fact that the overwhelming preponderance of alleged misstatements came from OSA, not Citigroup. The order focuses very heavily on reliance, and we think correctly, which we'll talk about. And then the order focuses on Siendra, which I'm going to talk about in a moment. Obviously, we have many, many arguments with respect to this complaint, and they have to meet 9B. Do you think the district court got it wrong by saying that a strong inference of Siendra is required to plead common law fraud claims? I do not, Your Honor, in the sense that there are multiple cases in federal district courts interpreting federal law that use that language. We cite them in our brief. But I also agree with the suggestion that it doesn't matter. They did not come close to pleading knowledge with respect to Citigroup. And I want to – I'm going to just react very specifically to the questions you asked my adversary. The memorandum that they refer to from the CEO of Citi, it says that they discovered a fraud. And they can't cherry-pick from these documents what they like and what they don't like. The document says that Citi discovered this fraud in February of 2014. It says that one employee was terminated. It doesn't say it was a Citi employee. How could Citi terminate an employee of another company? It says an employee was terminated. And it is a wholly owned subsidiary. And to come to the point, the person that was criminally charged that they refer to, the person that was terminated was a Banamex employee. Now, you could say that's a factual dispute. But they can't guess. They have to know. This is 9B. They can't say we think it's a Citigroup employee. It doesn't matter what the facts are. It was a Banamex employee. The Mexican government did not arrest anyone in the United States. Everybody arrested in connection with this was in Mexico. And if you look at what their complaint actually alleges, and it's shape-shifted a lot because the very first complaint they filed in this action specifically pleaded that Citi first learned of the fraud in February, which, of course, is true, which, of course, is consistent with the SEC case that was settled against Citi. But they rely on so heavily that punished Citi not for participating in a fraud or aiding and abetting a fraud, but for failure to detect one. Again, they take the parts of the document they like, which is that the government got involved, and they ignore what it said. If you look at their own pleading in terms of these employees and who did what, there's a very significant reference to Banamex. They say that the employees of the CMBV charge, and I'll get you the site, were Banamex employees, not Citi employees. So, again, one could conclude, well, we're debating facts. No. They have the burden of proof with particularity, or rather, the burden of pleading with particularity under 9b. They cannot guess. If they are guessing, they don't have the claim. With respect to reliance, I think that's an efficient place to start. The court is familiar with for now. In that case, investors brought RICO and fraud claims against the beauty salon company, alleging that they were defrauded into investing in the company. The CEO allegedly made false statements about the company's financial status, mostly through e-mails and investor presentation documents, supposedly failing to disclose that the numbers were far worse. There were mounting problems with the company. That's exactly, Your Honors, as is alleged here. And just as was the case here, following three amended complaints, the district judge dismissed for lack of adequate reliance allegations. This court affirmed, saying that for no plaintiffs, quote, alleged only that if defendants had made full and accurate disclosure at the time of sale, plaintiffs would not have invested in the company. The court held that that did not establish the link of transaction causation because it provides no information about which of the specifically alleged misrepresentations, if any, induced them to purchase shares. That seems to me to be in stark contrast, though, with, for example, paragraph 1496 of the complaint, where the appellants allege that when deciding whether to lease the Titan II to OSA in April 2011 and continuing to lease the vessel between April 2011 and February 2014, Gulf relied on Citigroup's material omissions in the April 2011 meeting relating to its support of OSA and the reliability of the cast advanced facility. What's wrong with that allegation? Your Honor, what's wrong with that is exactly like for no. And for no, they allege that information was provided, affirmative information about the company, just like you just described in that allegation, but that information was omitted. And what for no in other cases are saying is to establish plea reliance, you need something more. You need to say you did something with this information, why it made a difference. That allegation is completely absent. Well, what it did was continue to lease the vessel, decide whether to lease the vessel, and continue to lease the vessel. So I'm not sure what you're arguing. Because the cases say that saying I heard a misrepresentation and then I invested or I continued to invest is not enough to plead reliance under 9B. You can't just wash over that view and then you act and then you assume it was a causal chain. That's what the case says. That's what other cases say. And I would argue that the for no allegations are actually in many ways more pointed on the issue of reliance. The other point is that this is not a class action. We have 30 plaintiffs, okay, with very different allegations in terms of the level of interaction, what they did, who they spoke with. And plaintiffs are asking essentially for a presumption that, well, if we please more for this one, just assume it for the rest. This is 30 cases under one cover. They have to do the work of pleading it with respect to each plaintiff. And this they have not done. In terms of the various categories of plaintiffs and before you get to that, let me ask you another question. I didn't see where either party cited bridge versus Phoenix Bond and Indemnity Company, the Supreme Court case, which said that a plaintiff asserting a RICO claim predicated on mail fraud need not show that it relied on the defendant's alleged misrepresentations. Is that case relevant here? I believe so. Neither party cited it, Your Honor, but I can't speak to that decision as applied to these facts. We do know that with respect to the RICO claims, there are substantial independent problems, which is the basis for federal jurisdiction in this case. One of them is the PSLRA bar issue, which we briefed, which is that certainly with respect to the bondholder plaintiffs and arguably with respect to all of the plaintiffs, given that it's one count of wire fraud as a predicate. It is a claim that they were deceived into purchasing securities, which would fit like a glove with the PSLRA bar. Now, they say because some of these claims are holder claims, it shouldn't apply because a holder claim isn't recognized under 10B. But there's authority, and we've cited it, for example, from the Supreme Circuit to the effect that even if the plaintiff doesn't have standing, if it's a securities fraud claim, the bar applies. For example, if you bring an aiding and abetting claim, which is also not recognized under 10B in a private right of action, the PSLRA bar applies. You also have the continuity problem, which is very stark, which is that the only factual allegations, again, these are the well-pleaded non-conclusory factual allegations, are that this conspiracy lasted for six months, ending in February 2014. Prior to that, they allege uninformation belief, which is not sufficient. There are multiple cases holding that that is not enough time for closed-end continuity. With respect to open-ended continuity, you have to show that this is a way of doing business, an ongoing criminal organization that would not do an internal investigation, fire employees, stop financing an alleged fraud. I mean, they don't even seriously argue that they meet the open-ended continuity requirements. So the RICO claim— What about the closed-ended continuity requirements? Have they met that? Well, with respect to—the issue is the duration, Your Honor. There's good authority, and we've cited it, that's consistent that something less than a year is not long enough. Now, they say in a conclusory fashion, no government charged this or said that this was the case. They say in a conclusory fashion it went back to 2008, but it's expressly on information belief. And then the question, I believe Judge Fryer asked, 9B is not satisfied by information belief allegations unless the information is exclusively within the knowledge of the defendant, which is not the case here. It's alleged that there was a conspiracy of multiple parties, and the plaintiff pleads underlying facts that would support that inference. And they don't do that. They don't do that at all. They simply just say on information belief it goes back to 2008. There are some general allegations, oh, the ratio of advances may have been larger than the contracts. It's not specific. The only specific allegations they give with respect to payments that were allegedly fraudulent go back six months. It's well set out in our briefs. And again, I would really urge the Court to focus on their initial pleading that Citigroup discovered this fraud in 2014, the way that they mix and match and describe Banamex and Citigroup as one of the same, the way that, and we ask, we're not asserting, we are asserting the fact that no Citigroup employee was charged in Mexico with a crime. Those were all Banamex employees. Again, it's not me arguing a summation. They have to plead that if Citigroup employees were charged, if that's their basis for Siena, which is what I heard, with some basis. I believe they pleaded that a Citigroup employee was fired. Right. Well, right. Well, they also said that they also said that they were charged and the Citigroup employee referred to there, although again, they don't specify it in the complaint, and I don't see how that could meet 9B, was a Banamex. The person referenced in that document is a Banamex employee. But again. What if it wasn't at that point? Have they pleaded enough in that respect? I would argue no, because I think you're basically looking at two different frauds. You asked about the plausibility of this entire fraud, right? So there's a payment factoring fraud that happens in Mexico. Banamex, there's no dispute, was the party that was working, advancing the funds to OSA, and then Pemex would be billed. That fraud occurred. There's no dispute that there was a fraud there that occurred. There's now all of these interactions with bondholders and shipping vessel companies, et cetera. They haven't pleaded facts suggesting that Banamex, let alone Citigroup, sat down with OSA and said, let's deceive our bondholders. Let's deceive the shipping vessel companies. No. You have a localized fraud, right, which is completely antithetical to the interests of Citigroup. Citigroup lost nearly $500 million here and was charged by the SEC for failing to protect itself from that. So you have a localized fraud. So I think you have to look, interaction by interaction, at who it is that is speaking with these plaintiffs and what did they know. We cited below. I mean, there are multiple cases. Back up again. I'm not sure you answered my question, which is, if this person that they have mentioned in their complaint worked for Citigroup, have they pleaded knowledge? I would argue that they have pleaded that someone within Citigroup, okay, knew that there was a fraud in Mexico. I do not believe they would have pleaded knowledge of the fraud upon which they are suing, which is that they were deceived by OSA and allegedly Citigroup into making investments and into doing business with this company. I would refer the court to the Mazzaro opinion from the 11th Circuit, 544F3R1230, that says that the corporate official, and this is in the context of federal securities fraud, but the principle comes from common law because it in turn cites a Fifth Circuit case called Southland, which says so. The principle is the person interfacing with the person who says they were defrauded has to know about the fraud for there to be scienter or knowledge. They don't allege that, and this is why these details matter. We can go, and we don't have time to do, but we could go plaintiff by plaintiff. In most cases, they don't identify who it was at Citi who was even speaking to them. Why doesn't Florida law, though, impute that knowledge to the individuals who are speaking? Well, the question of scienter, first of all, I am referring to federal cases, but it comes from common law, and we believe that Florida law would recognize the fact that a person who knows nothing of a fraud and goes out and sells an instrument to an investor is not acting with scienter, is not acting with knowledge. And certainly, we can't even begin to do the analysis, and this goes back to these fundamental line B failures. We can't even begin to do the analysis when they don't tell us who they met with. I mean, these are facts that are within their control, right? Reliance, who said what to whom, that is their burden because they can know that. If you go plaintiff by plaintiff, you'll see in many, if not most cases, they don't identify who they spoke with. They don't allege that the person had knowledge of the fraud. So, essentially, you're cutting across two different corporate entities that collectively, as a corporate family of hundreds of thousands of employees, say, if one person sitting in Mexico, taking the assumption of your question, judge, work for Citigroup, every single interaction that Citigroup has as a bond trustee sitting in New York, you know, assisting with a presentation is fraud. Everyone in the company is deemed to have knowledge of the fraud. That's not what these Sienta cases say, right? The Sienta cases focus on, does the speaker have the right intent? And particularly in a circumstance where, again, we don't get to assume that it was a Citigroup employee. They need well-pleaded facts under Rule 9b that it was a Citigroup employee. They do not have that. The fact that the CEO makes reference to an employee that could easily be of a consolidated subsidiary does not make that person a Citigroup employee. And, again, why are we taking only one statement from that document? The document also says we learned about this fraud in 2012, in 2014, February 2014. I see I'm over my time. Unless the court has any other questions, we ask that the court affirm. Thank you. I'd like to just address four points that Citigroup raises. The first is they say that few plaintiffs interacted with Citi and only in ministerial ways. That's simply incorrect. We cite throughout our brief, and as I said in my opening here, there are many examples of plaintiffs interacting directly with people who are named specifically as Citigroup employees, literally by name, including Mr. Brownhaw, with specific allegations, again, paragraph 88, saying exactly why we believe he's a Citigroup employee, because he himself said he was a Citigroup employee. Citigroup argues that there are at least nine appellants where there's a failure to allege any substantive communications with Banamex or Citigroup. Is that true? So, I don't know if that's exactly the right number. There are certainly some plaintiffs who do not. There are some who do, and there are some who do not. And for those who do not, what they allege is that OSA made misrepresentations to them, which I think is basically undisputed, and that Citigroup participated in the making of those misrepresentations. So, I can point this court to specific – here, let me just find the right paragraph numbers. Page 40 of our opening brief provides the full paragraph numbers. I won't go through that at all right now. But if this court wants a good example, paragraphs 233 to 36 of the complaint talks about Citigroup assisting in the preparation of specific presentations made by OSA with Citigroup's logo on those presentations and effectively giving them the information of Citigroup and those presentations being shared with certain subsets of plaintiffs. So, the plaintiffs who did not directly interact with Citigroup were still getting information from Citigroup through OSA. Also, I call this court's attention to paragraphs 797 and 938 of the complaint, where Citigroup sent OSA's financial statements directly to the plaintiffs, knowing that they were false. So, in two different ways, either through OSA or Citigroup sending OSA's financial statements, even those who did not directly interact with Citi still have claims for fraud. The second point that Citigroup raises, they say that there's no scienter in that the statement from the CEO just says an employee was terminated. It is not written in the passive voice. It says we terminated an employee. And when a CEO of a company says we terminated an employee is far more than a plausible inference that that employee is an employee of that corporation. What about the idea that it was an employee of a subsidiary corporation? If the question is whether that's possible, I suppose it is possible, but it's certainly not the most natural reading of what the CEO said. And certainly, at the very least, there's a plausible inference of that. And I'd also point to the Mexican government's charging. They say that we don't say that it was a Citigroup employee. We specifically, specifically allege, and by name, who these people were and that they were Citigroup employees. Now, they were Citigroup employees in Mexico, but we do specifically allege that they were, in fact, Citigroup employees. This is Paragraphs 176 to 177 of the complaint. The third point that they make is on reliance. They cite the Fernow case. The Fernow case dealt with allegations that were far, far less specific than the allegations of reliance here. And the allegations of reliance here honestly could not have been more specific. What they said was they told these are the specific misrepresentations they made to us. We would have acted differently. We would not have leased vessels. We would have sold our investment, or we would not have provided loans in the case of Rabobank if they had not made those misrepresentations to us, if they had not omitted the truth of the fraud. And it's far more than plausible that had they not had those misrepresentations, had they known about the fraud, then, of course, they would not have not loaned money, would not have leased vessels, would not have continued their investments with OSA. The last point I want to make is on this question of the PSLRA bar. And they don't cite to the statute. And what the statute says is that you cannot rely on conduct that would constitute fraud in the purchase or sale of securities. Here, many plaintiffs had nothing to do with securities at all. Even the ones that did, it was not an allegation of fraud in the purchase or sale of securities. The last point they make is on continuity. On the question of continuity, yes, there was an allegation on information and belief that the fraud started in 2008. They say that there are no underlying facts to support that. That is incorrect. There are clear facts to support that the allegation that the fraud began long before 2014. I call this court's attention to paragraph 129 of the complaint, where it's alleged that Citigroup fired an employee for receiving bribes and kickbacks from OSA. So, again, allegations long before 2014 regarding the potential for this fraud make it far more than plausible that it began before 2014. Your friend at the other table seems to draw a distinction between knowledge and scienter and say that even if knowledge is somehow imputed, scienter can't be able to respond to that. I know of no legal principle or case that supports that. I know that Chang specifically said that a corporation's employee's knowledge is imputed to the corporation. And that is, frankly, as I understand it, black-letter law, and that a corporation cannot sort of say, well, only this person knew. And, therefore, I can, you know, other people in the corporation can make whatever false statements that they want. And, frankly, it's not something that they argue below or here in their briefing at all. So, the fact that we say that there were employees who knew about this fraud is sufficient without saying that these are exactly the same people who made the misstatements. Thank you. Thank you, counsel. Court is adjourned until tomorrow morning. Thank you.